## Weber v. Commonwealth.

(Decided Nov. 15, 1932.)

DAVID SESSMER for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

On July 2, 1931, Mert Thomas and others were jointly indicted by the grand jury of Jefferson county

for the crime of robbery, and by order of the court Thomas was permitted to give bond for his appearance in the sum of $5,000. On July 28 following the indictment, he executed a bail bond for his appearance in the criminal division of the Jefferson circuit court on the 24th day of September, 1931, to answer the charge in the indictment, with P. A. Weber as surety. At the time the bond was executed, Weber made an affidavit listing certain real estate which he owned, the value thereof, and the extent to which it was incumbered.

When the case was called for trial, Thomas failed to appear, and, upon motion of the commonwealth's attorney, an order was entered forfeiting the bail bond and directing that summons issue against surety returnable on the 5th day of October, 1931, to show cause, if any he could, why the commonwealth should not have judgment against him in the sum of $5,000 according to the form and effect of the bond. Weber was duly served with summons on the forfeiture, and by agreement of parties the hearing thereon was continued until the 19th day of October. On that date he filed an affidavit and motion for continuance, and on the following day filed a response of which the affidavit for continuance was a part. In substance and effect, it is stated in the affidavit that Mert Thomas, for whom the respondent had become surety on the bail bond, was in Louisville up to and immediately before the case was called for trial, and it was a surprise to respondent that he did not appear at the trial; that, after the order of forfeiture was taken, respondent posted a reward of $500 and went to expense in advertising and sending descriptions of Thomas to various cities, and, if given a continuance of 30 to 60 days, he believed he would be able to locate him; that he had information that Thomas was then hiding in the city of Indianapolis; that he had investigators trying to locate him, and, if given time, would procure his address and produce him in court.

In the response it is stated that respondent had information that, during the convention of the American Legion in the week of September 21, Thomas was in the city of Detroit, where he was arrested by United States authorities, and by reason thereof prevented from appearing to stand trial, and, though he did not know how reliable this information was, if given time, his investigators would obtain proof of the facts, and, if same proved to be true, he would be entitled to have the bond forfeiture set aside.

The court sustained the demurrer to the response, and on the 21st day of October an amended response was filed. reaffirming the statements in the original response and the affidavit which was made a part thereof. It was further stated that Mert Thomas had been rearrested by the commonwealth and lodged in the Jefferson county jail on the 3d day of August after the bail bond had been executed, and was released from the jail without the knowledge or consent of respondent on the 11th day of August. Thereafter he filed a second amended response in which he made further allegations as to the arrest of Thomas after the bail bond was executed, and alleged that, by reason of the arrest and incarceration of Thomas in jail, the commonwealth, through its officers, took from respondent the power to exercise the supervision and control over the movements and actions of Thomas which he as surety was entitled to have under the law.

A demurrer to the second amended response was overruled, and the commonwealth filed answer to the amended and second amended responses which, after traversing the allegations thereof, further alleged that Thomas was arrested on August 3, 1931, by city detectives on the charge of vagrancy and delivered to the jail of Jefferson county, where he was held for some days, but that the charge on which he was arrested and held was a separate and distinct charge from that in the indictment in the case wherein the bond was executed; that Weber at no time took any steps to secure a surrender of Thomas or to coerce his presence in the court on the date set for the trial.

It is shown by affidavits of officers filed with the answer to the amended response that Thomas was arrested on a charge of vagrancy on August 3 and delivered to and kept in the Jefferson county jail until August 11; that he was taken to the Louisville police court, the vagrancy charge against him disposed of, and he was not returned to jail.

On October 26 the cause was submitted upon motion of the commonwealth's attorney for judgment against the surety, Weber, and it was adjudged by the court that the commonwealth recover of him the sum of $5,000, with interest from that date, and upon further motion of the commonwealth's attorney it was ordered that forthwith the execution should issue. On October 31, respondent Weber, filed motion and grounds for

new trial, and, the motion being overruled, he has prosecuted this appeal.

It is first argued by counsel for appellant that the commonwealth was not entitled to enforce the payment of the bail bond against him as surety because of the arrest and imprisonment of Thomas after the bond was executed, and in support of that contention the cases of Commonwealth v. Overby, 80 Ky. 208, 44 Am. Rep. 471, and Commonwealth v. Skaggs, 152 Ky. 268, 153 S. W. 422, 44 L. R. A. (N. S.) 1064, are cited.

In the Overby case, bail bond had been executed for the appearance of Overby in the Christian circuit court on a charge of passing counterfeit United States Treasury notes, and, failing to appear, the bond was forfeited. By response it was made to appear that, on the day following the execution of the bail bond, Overby was arrested on the same charge by a United States officer. He was committed to the Jefferson county jail until he was indicted, tried, and convicted in the United States court for that offense and sentenced to confinement in the penitentiary of New York for a term of 5 years. It was held that the bail was exonerated.

In the Skaggs case, the defendant at an examining trial was held to answer in circuit court a felony charge, and, being permitted to give bail, executed a bond with one Sanders as surety for his appearance in the circuit court on the first day of the following term to answer the charge. At the following term, the grand jury returned an indictment against him, and upon motion of the commonwealth's attorney it was ordered that a bench warrant issue and defendant be allowed to give bond in the sum of $1,500. Defendant, who was in the courtroom, was arrested upon the bench warrant and immediately taken before the court. In reply to inquiry from the court, he stated that he was not ready for trial and did not know whether he could give bond on that day. His case was assigned to a later day of the term, and the court placed him in charge of the jailer, who started to jail with him, but, before arriving there, he fled and made his escape. When the case was called on the day to which it had been assigned f o r trial, the defendant did not appear, and an o r d e r was entered forfeiting the bail bond and summons issued against the surety. In response, the surety pleaded the facts as above stated, which the lower court held good, and this court affirmed the judgment on appeal. In the opinion it was held, in substance, that the

commonwealth by her own act in taking charge of the defendant removed him from the custody and control of the bail, and the latter was thereby discharged from liability on the bond.

It is at once apparent that these cases are not in point, since in this instance the defendant for whose appearance the bond had been executed was not rearrested or imprisoned on the same charge, nor was he detained in prison at the time fixed for his appearance to answer the charge. He was held only for a few days on some minor charge in the police court of the city, and neither the commonwealth nor its officers, so far as the record discloses, put it out of the power of the accused to appear and answer the charge or in any way hindered or prevented the surety on the bail bond from surrendering the defendant before a forfeiture was taken.

It is further argued by appellant that the lower court erred in not transferring the case to equity upon his motion because real estate is involved and the issues raised by pleadings are equitable. We find it asserted in brief that a real estate bond was posted. So far as the record shows, the only basis for this assertion is the affidavits filed in the record showing certain real estate owned by appellant. Manifestly, these affidavits were taken in compliance with section 77 of the Criminal Code of Practice, and their only purpose was to show the qualifications of the person offered as bail. There is a Code provision whereby money may be deposited in lieu of bail, but no provision relating to the posting of real estate. There is no merit in the contention that the title to real estate is in any way involved in this proceeding or that any equitable question was presented authorizing the transfer of the case to the equity docket.

It is asserted by counsel for the commonwealth that, since the motion for new trial was not filed within the time prescribed by the Code, and since no reason is shown to excuse the delay, the only question presented by the appeal is whether the pleadings support the judgment. That contention is amply supported by authority. Wages' Adm'r v. L. & N. R. R. Co., 223 Ky. 227, 3 S. W. (2d) 637; Traut v. Kirkpatrick, 231 Ky. 99, 21 S. W. (2d) 124. Clearly, the pleadings in this case support the judgment, but it is unnecessary to go into this contention, because, as already indicated, no reversible error is made to appear by the record.

Judgment affirmed.